# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

MATTHEW ROLPH,

Plaintiff,

v.

HOBART AND WILLIAM SMITH COLLEGES,

Defendant.

CIVIL NO.  6:16-cv-06515

OPPOSITION TO MOTION TO DISMISS

Plaintiff Matthew Rolph, f/k/a John Doe, respectfully submits this Opposition to the Motion to Dismiss the Amended Complaint by Defendant Hobart and William Smith Colleges (the "Colleges").

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

FACTS .............................................................................................................................2

    A.    The Colleges' Crackdown And Public Pressure ....................................................2

    B.    The 2013-2014 Student Handbook ......................................................................3

    C.    The Fall 2014 Incident And The Colleges' Disciplinary Actions Against Rolph ...............4

ARGUMENT ......................................................................................................................7

    A.    Standard ..............................................................................................................7

    B.    Title IX ...............................................................................................................7

    C.    Article 78 ..........................................................................................................14

    D.    Breach of Contract and Promissory Estoppel ..................................................16

    E.    Negligence .........................................................................................................20

    F.    Negligent Infliction of Emotional Distress ......................................................21

CONCLUSION .................................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*A.W. v. Lancaster Cnty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010) ....................................20

*Alexson v. Hudson Valley Cmty. Coll.*, 125 F.Supp.2d 27 (N.D.N.Y. 2000)................................................15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................................7

*Atria v. Vanderbilt Univ.*, 142 F.App'x 246 (6th Cir.2005)........................................................................18

*Austin v. Univ. of Or.*, D.Or. No. 6:15-CV-02257-MC, 2016 U.S. Dist. LEXIS 121198
  (Sep. 8, 2016)..........................................................................................................................................9

*Basile v Albany Coll. of Pharm. of Union Univ.*, 279 AD2d 770, 719 N.Y.S.2d 199 (3d Dept. 2001) .......18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................................7

*Boere v. Nationwide Mut. Ins. Co.*, E.D.Mich. No. 08-CV-12213, 2008 U.S. Dist. LEXIS 63575
  (Aug. 20, 2008)......................................................................................................................................19

*Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002) .............................................................7

*Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 408, 151 N.E.2d 833,
  176 N.Y.S.2d 259 (1958) ......................................................................................................................21

*Clark v. Trustees of Columbia Univ.*, No. 95 Civ. 10627 (PKL), 1996 W.L. 609271
  (S.D. N.Y. Oct. 23, 1996)......................................................................................................................15

*Clark-Fitzpatrick v. Long Island R.R. Co.*, 70 N.Y.2d 382, 516 N.E.2d 190,
  521 N.Y.S.2d 653 (1987). .....................................................................................................................20

*Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995) ...........................................19

*Dempsey v. Bucknell Univ.*, Civil Action No. 4:11-cv-1679, 2012 U.S. Dist. LEXIS 62043
   (M.D. Pa. May 3, 2012)........................................................................................................................18

*Doe v. Brandeis Univ.*, D. Mass. Civil Action No. 15-11557-FDS, 2016 U.S. Dist. LEXIS 43499
  (Mar. 31, 2016)......................................................................................................................................11

*Doe v. Brown Univ.*, 166 F. Supp. 3d 177 (D.R.I. 2016) ...........................................................................13

*Doe v. Brown Univ.*, D.R.I. No. 15-144 S, 2016 U.S. Dist. LEXIS 21027 (Feb. 22, 2016) ......................18

*Doe v. Columbia Univ.*, 2d Cir. No. 15-1661, 2016 U.S. App. LEXIS 13773 (July 29, 2016)............*passim*

*Doe v. Case W. Reserve Univ.*, No. 1:14CV2044, 2015 U.S. Dist. LEXIS 123680
  (N.D. Ohio Sept. 16, 2015)....................................................................................................................14

*Doe v. Ohio State Univ.*, S.D. Ohio No. 2:15-cv-2996, 2016 U.S. Dist. LEXIS 7700
  (Jan. 22, 2016) ......................................................................................................................................11

*Doe v. Univ. of Cincinnati,* S.D. Ohio No. 1:15-CV-681, 2016 U.S. Dist. LEXIS 37924
  (Mar. 23, 2016)......................................................................................................................................12

*Doe v. Wash. & Lee Univ.*, W.D.Va. No. 6:14-cv-00052, 2015 U.S. Dist. LEXIS 102426
  (Aug. 5, 2015)........................................................................................................................................12

*Evans v. Columbia Univ.*, S.D.N.Y. No. 14-cv-2658 (NSR), 2015 U.S. Dist. LEXIS 48768 (Apr. 13, 2015) ........................................................................................................................17

*Fletcher v. S. Peninsula Hosp.*, 71 P.3d 833 (Alaska 2003) ...............................................21

*Gally v. Columbia Univ.*, 22 F. Supp. 2d 199 (S.D.N.Y. 1998) .......................................17

*Habitzreuther v. Cornell Univ.*, N.D.N.Y. No. 5:14-cv-1229 (GLS/TWD), 2015 U.S. Dist. LEXIS 112209 (Aug. 25, 2015) ...................................................................................... 14, 15

*Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897 (2d Cir. 1980) ...........................................21

*Hospitals Gess v. United States*, 952 F.Supp. 1529 (M.D.Ala.1996) ...............................21

*Johnson v. Bon-Ton Dep't Stores, Inc.*, 278 F.App'x 56 (2d Cir.2008) ............................21

*Jones v. Trustees of Union College*, 92 A.D.3d 997, 937 N.Y.S.2d 475 (3d Dept. 2012)...............................17

*Keles v. Manhattan College Corp.*, S.D.N.Y. No. 88 Civ. 8080, 1993 U.S. Dist. LEXIS 11696 (Aug. 20, 1993)..........................................................................................................16

*Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408, 402 N.E.2d 1150, 426 N.Y.S.2d 248 (1980) ...................17

*Papaspiridakos v. Educ. Affiliates, Inc.*, E.D.N.Y. No. 10 CV 5628, 2013 U.S. Dist. LEXIS 129748 (Sep. 11, 2013).....................................................................................14, 15, 16

*Pell v. Trustees of Columbia Univ.*, S.D.N.Y. No. 97 Civ. 0193, 1998 U.S. Dist. LEXIS 407 (Jan. 21, 1998) ......................................................................................................................16

*Rensselaer Socy. of Engrs. v Rensselaer Polytechnic Inst.*, 260 AD2d 992, 689 N.Y.S.2d 292 (3d Dept. 1999)......................................................................................................................18

*Routh v. Univ. of Rochester*, 981 F.Supp.2d 184 (W.D.N.Y.2013)..................................17

*Sahm v. Miami Univ.*, 110 F. Supp. 3d 774 (S.D. Ohio May 20, 2015) ...........................12

*Salau v. Denton*, 139 F. Supp. 3d 988 (W.D. Mo. Oct. 8, 2015) ......................................12

*Sheppard v. Beerman,* 18 F.3d 147 (2d Cir. 1994)................................................................7

*United States ex rel. Diop v. Wayne Cnty. Cmty. Coll. Dist.,* 242 F.Supp.2d 497 (E.D.Mich.2003)............21

*Vanden Bosch v. Bayer Healthcare Pharms., Inc.*, 13 F. Supp. 3d 730 (W.D.Ky.2014) .................................19

*Ward v. New York Univ.*, S.D.N.Y. 99 Civ. 8733, 2000 U.S. Dist. LEXIS 14067 (Sep. 25, 2000).........17

*Yu v. Vassar Coll.*, 97 F. Supp. 3d 448 (S.D.N.Y. 2015) .................................................16

*Yusuf v. Vassar Coll.*, 35 F.3d 709, 714-16 (2d Cir. 1994).......................................*passim*

**OTHER AUTHORITIES**

72 Fed. Reg. 3432 ............................................................................................................... 2

20 USCS § 1099b et seq ..................................................................................................... 21

34 C.F.R. Part 106 ........................................................................................................... 1, 7

N.Y. C.P.L.R §7800 et seq ............................................................................................ 14-16


Bogdanich, *Reporting Rape, and Wishing She Hadn't*, New York Times, July 12, 2014 ........................... 10

Lipka, *The 'Fearmonger,'*, Chron. Of Higher Ed., Nov. 21, 2011 ............................................... 5

Open Letter From Members Of The Penn Law School Faculty:  Sexual Assault Complaints:
   Protecting Complainants And The Accused Students At Universities, Feb. 8, 2015 ....................... 1

Letter from Office for Civil Rights, U.S. Dep't of Educ, (Apr. 4, 2011) .................................... 2

*U.S. Department of Education Releases List of Higher Education Institutions with Open Title IX
   Sexual Violence Investigations*, May 2, 2014 .......................................................... 3

**INTRODUCTION**

This case arises amidst a growing national controversy about the responses of colleges and universities to sexual assaults on campuses. After years of criticism for being too lax on campus sexual assault, the Federal Government, through the Department of Education, has been using Title IX to pressure colleges and universities to aggressively pursue investigations of sexual assaults on campuses. This case is a result of Title IX's implementing regulations and guidance. These regulations and guidance require that schools "adopt and publish grievance procedures providing for the prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited." 34 C.F.R. § 106.8(b). Members of the faculty of the University of Pennsylvania Law School summed up the problem succinctly:

> We believe that OCR's approach exerts improper pressure upon universities to adopt procedures that do not afford fundamental fairness. We do not believe that providing justice for victims of sexual assault requires subordinating so many protections long deemed necessary to protect from injustice those accused of serious offenses.

Open Letter From Members Of The Penn Law School Faculty: Sexual Assault Complaints: Protecting Complainants And The Accused Students At Universities, Feb. 8, 2015.[1] The Colleges actions in this case, if allowed to stand, paves the way for future injustices by rejecting the proposition that students are entitled to justice rendered under the rules of law and would compromise and demean the concept of fundamental fairness.

---

[1] (available at:  http://media.philly.com/documents/OpenLetter.pdf [last visited 10/17/2016])

**FACTS**

Plaintiff Matthew Rolph (the "Plaintiff" or "Rolph") was a student at the Colleges from September 2010 to April 2014. Rolph had completed enough courses at the Colleges, and was nearing graduation before he was expelled in violation of his contractual rights and Title IX.

**A.      The Colleges' Crackdown and Public Pressure**

After years of criticism for being too lax on campus sexual assault, at the urging of OCR and other high-ranking officials in the Obama Administration, colleges and universities are relying on Title IX to crackdown on alleged perpetrators. On April 11, 2011, OCR sent a "Dear Colleague" letter to colleges and universities. *See* Letter from Office for Civil Rights, U.S. Dep't of Educ, (Apr. 4, 2011) (the "Dear Colleague Letter").[2] The "Dear Colleague" letter was a step in the increased enforcement of Title IX on colleges and universities.

In May 2014, the federal Department of Education disclosed for the first time the names of colleges — 55 in all, *including the Defendant Colleges* — under investigation for possibly violating federal rules aimed at preventing sexual harassment. The assistant secretary of education who heads the department's Office for Civil Rights, told college officials that schools need to make "radical" change and otherwise pressured colleges and universities to treat all those accused of sexual misconduct with a presumption of guilt. Most significantly, the Department of Education has threatened to withhold all federal funds from schools the Department deems to not be in compliance with Department directives. The Amended Complaint, citing media sources, alleges that "schools are running so scared

---

[2]Available at http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf. The Dear Colleague Letter is a "significant guidance document," as defined by the Office of Management and Budget's Final Bulletin for Agency Good Guidance Practices. *See* Dear Colleague Letter at 1 n. 1; 72 Fed. Reg. 3432. It "does not add requirements to applicable law, but provides information and examples to inform recipients about how [the Office for Civil Rights] evaluates whether covered entities are complying with their legal obligations." Dear Colleague Letter at 1 n.l.

of violating the civil rights of alleged victims that they end up violating the due process rights of accused students instead.

Prior to the events that led to Rolph's dismissal from the Colleges, the Colleges was facing tremendous pressure to crack-down on those accused of sexual assault. The Colleges, during this time, was under investigation by the Department of Education for possible violations of federal law over the handling of sexual violence and harassment complaints.[3] In 2013, an advocacy group that describes itself as a community of people mobilized to fight sexism and expand women's rights, targeted prospective students of the Colleges in an ad campaign on Facebook. One version read, "Applying to Hobart & William Smith? You should know about its rape problem" and another version read, "Hobart & William Smith has a rape problem. Find out more before you apply." The Colleges subsequently attracted national attention in 2014 for a case involving a female student who claimed she was raped by three members of the football team in the fall of 2013. The students were found not responsible following an investigation and adjudication at the College. *The New York Times* in 2014 published a front page article on the proceedings at the Colleges.

**B.     The 2013-2014 Student Handbook**

The relevant Sexual Misconduct Policy for the events described in this Complaint is found in the 2013-2014 Student Handbook. The 2013-2014 Sexual Misconduct will be referred to generically as the "Sexual Misconduct Policy." (Attached to the Original Complaint as Exhibit A.) The Sexual Misconduct Policy states that the Colleges is "committed to creating and maintaining an academic and working environment that respects the different voices and experiences of its members and that nurtures the trust of its academic mission."

---

[3] *See U.S. Department of Education Releases List of Higher Education Institutions with Open Title IX Sexual Violence Investigations*, May 2, 2014 (available at:   http://www.ed.gov/news/press-releases/us-department-education-releases-list-higher-education-institutions-open-title-i)

The Sexual Misconduct Policy establishes up a distinct and unique process and procedures for Title IX and sexual assault claims apart from the standard disciplinary process established elsewhere in the Handbook of Community Standards for other violations of the rules of the Colleges.  Violations of the Sexual Misconduct Policy may subject a student to sanctions from the Colleges including, but not limited to: probation, required withdrawal, permanent separation, financial restitution, and/or other sanctions as determined as a result of disciplinary procedures.  (Complaint, Exhibit A, p. 8.)

The Sexual Misconduct Policy provides that all complaints under the Sexual Misconduct Policy should eventually be directed to the Colleges' Vice President for Human Resources (Employee Sexual Grievance Officer) or the Associate Dean of Students (Student Sexual Grievance Officer). Exhibit A, p. 13.  A Sexual Grievance Board ("SGB") reviews allegations that students have violated the Sexual Misconduct Policy. Exhibit A, p. 14.  A Student Grievance Panel (SGP), consisting five SGB members, meets individually with the complainant, accused student, and any individuals the Panel considers likely to have relevant knowledge or information related to the complaint. Legal counsel for students may not be present for any part of the SGP's meetings with the parties or witnesses.  An accused student has no opportunity to cross-examine or directly confront his accuser

**C.    The Fall 2014 Incident and The Colleges' Disciplinary Actions Against Rolph**

Rolph was expelled from the Colleges for events that allegedly occurred beginning on the evening of February 21, 2014, continuing into the morning of February 22, 2014.   Rolph engaged in consensual sexual activity with Jane Roe during the early morning of February 22, 2014.  Jane Roe alleged that the sexual activity was not consensual.[4]

---

[4] The Amended Complaint alleges the basic facts of the Fall 2014 Incident.  The Motion to Dismiss recounts Jane Roe's allegations in detail, proceedings in the Ontario County Family Court, and even attempted to support her actions by reference to a paper published by the National District Attorneys Association.  (Def. Memo. at 3-4 and n.2.)  All of this is irrelevant.  For purposes of the Motion, the Court is required to accept the pleading that the sexual encounter was consensual and that Jane Roe had "ulterior motives" for making her false allegations.  (Am. Complaint ¶¶ 34, 41.)

4

The Colleges conducted an investigation.  The Colleges retained Erin Beatty, Esq. of Harter Secrest Emery, LLP. to conduct the investigation.  Beatty was not qualified to conduct such an investigation.[5]  (Complaint ¶ 42.)  The Complaint identifies in a non-conclusory manner a number of problems with Beatty's investigation, including that she focused on events that happened in the days following the alleged assault instead of the facts of the Fall 2014 Incident. Beatty did not make any effort to obtain Jane Roe's cell phone records from an independent source, such as the cell phone provider, or any other steps to preserve electronic evidence.  Nor did Beatty adequately investigate Jane Roe's motive for coming forward with the rape allegation so long after the incident.

In reliance on Beatty's report, the Colleges, on April 14, 2014, convened a SGP to adjudicate the claim that Rolph violated the Sexual Misconduct Policy by engaging in non-consensual sexual conduct with Jane Roe.  During the hearing, the Plaintiff was not permitted to be represented by an attorney or to question Jane Roe. The SGP concluded that Rolph violated the Sexual Misconduct Policy by engaging in non-consensual sexual conduct with Jane Roe.  The SGP took less than three hours to decide to recommend that the Plaintiff be expelled.

On April 15, 2014, Rolph was advised in writing that he was "permanently separated" from the Colleges, meaning he was expelled from school and barred from ever setting foot on campus.  The

---

[5] The Colleges touts the fact that Ms. Beatty was "certified" by the National Center for Higher Education Risk Management.  Def. Memo. at 4.  However, the Colleges glosses over the allegation on the Complaint that the National Center for Higher Education Risk Management is merely a for-profit organization formed to support the marketing efforts of attorneys who operate in this field.  (Am. Comp. ¶ 42(a).)  *See also* Sara Lipka, *The 'Fearmonger,'*, Chron. Of Higher Ed., Nov. 21, 2011 (referring to founder as a "tireless self-promoter" who "forms associations around hot topics").  A quick Google search reveals that the 'certification' is merely attendance at a four-day seminar.  *See* https://atixa.org/events/training-and-certification/coordinator-certification/#description1.

More importantly, for the purposes of this Motion, the Court is required to accept as true that the Colleges hired someone with no experience in conducting adequate investigations into allegations of sexual assault but who, instead, only has a background in employment-related investigations, including matters of discrimination, harassment, and occupational safety and health.  (Am. Comp. ¶ 42(b).)

Plaintiff appealed, but the Colleges refused to provide him with a copy of the transcript of the hearing to prepare his appeal.[6]  On April 28, 2014, the Plaintiff submitted his written letter of appeal.  On May 1, 2014, the appeal was denied.

This litigation followed, in part because the Plaintiff has been deeply and irreparably harmed by the Colleges' actions and continued actions.  (Am. Comp. ¶ 62.)  He was wrongfully deprived of the degree that he worked to obtain; he was just four months' shy of receiving his degree when he was expelled.  His expulsion from Colleges on the grounds of "sexual misconduct" will follow him throughout his life and is causing him difficulty and preventing him from obtaining a comparable college degree.  (*Id.*)

---

[6] The Plaintiff was required by the Colleges to sit in a public space in order to listen to a poor quality audio recording of the hearing.  This setting prevented the Plaintiff from effectively consulting with counsel or an advisor, and featured constant noise and frequent interruptions and distractions.  (Am. Comp. ¶ 54(b)).)

**ARGUMENT**

**A.      Standard**

In deciding whether to grant a Rule 12(b)(6) motion, this Court must accept all well-pleaded factual allegations of the Complaint as true and construe the complaint in the light most favorable to the plaintiffs. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002); *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir. 1994). The Complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" that is, "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**B.      Title IX**

The Plaintiff has asserted a valid claim against the Colleges based on Title IX, the federal statute designed to prevent sexual discrimination in educational institutions receiving federal funding. 20 U.S.C. § 1681 *et seq. See also* 34 C.F.R. Part 106 (Title IX implementing regulations). The Second Circuit has recognized two categories of Title IX claims: (1) claims of an erroneous outcome from a flawed proceeding, and (2) claims of selective enforcement. *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714-16 (2d Cir. 1994)). In an erroneous outcome case, a party asserts that he or she was innocent and wrongly found to have committed the offense. *Id.* Plaintiff alleges both claims against the Colleges.

The key cases in evaluating Plaintiff's claim are *Yusuf, supra.* and *Doe v. Columbia Univ.*, 2d Cir. No. 15-1661 (XAP), 2016 U.S. App. LEXIS 13773 (July 29, 2016). In *Yusuf*, the Second Circuit explained that in order to assert a claim based on an erroneous outcome/selective enforcement theory the Plaintiffs need to allege that the hearing was flawed due to the Plaintiffs' gender. The key language from the decision addresses the allegations at the pleading stage:

> A plaintiff must . . . also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding. Allegations of a causal

connection in the case of university disciplinary cases can be of the kind that are found in the familiar setting of Title VII cases. Such allegations might include, inter alia, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender.

35 F.3d at 715 (citations omitted).

*Yusuf* was followed in *Columbia*.  In *Columbia*, the Second Circuit reversed a decision of the district court dismissing a Title IX claim brought by a student who had been disciplined for an alleged sexual assault.  The complaint in *Columbia* alleged that the school was motivated "to refute criticisms circulating in the student body and in the public press that Columbia was turning a blind eye to female students' charges of sexual assaults by male students."  2016 U.S. App. LEXIS 13773 at *26.  Among the Complaint's allegations that support the inference of sex discrimination were that the investigator, the hearing panel, and the reviewing dean reached conclusions that were incorrect and contrary to the weight of the evidence.[7]  The Complaint further alleged that there had been "substantial criticism of the University, both in the student body and in the public media, accusing the University of not taking seriously complaints of female students alleging sexual assault by male students."  *Id.* at *27. The court concluded:

> Against this factual background, it is entirely plausible that the University's decision-makers and its investigator were motivated to favor the accusing female over the accused male, so as to protect themselves and the University from accusations that they had failed to protect female students from sexual assault…
>
> The Complaint alleges that, having been severely criticized in the student body and in the public press for toleration of sexual assault of female students, Columbia was motivated in this instance to accept the female's accusation of sexual assault and reject the male's claim of consent, so as to show the student body and the public that the University is serious about protecting female students from sexual assault by male students—especially varsity athletes. There is nothing implausible or unreasonable about the Complaint's suggested inference that the panel adopted a biased stance in

---

[7] The Colleges suggests that the criminal charges brought in this case belies an inference of gender discrimination.  Def. Memo. at 11.  This ignores the fact that the Plaintiff was ultimately acquitted in the criminal matter.  Moreover, such an inference in favor of the defendant would be improper on a 12(b)(6) standard.

favor of the accusing female and against the defending male varsity athlete in order to avoid further fanning the criticisms that Columbia turned a blind eye to such assaults.

2016 U.S. App. LEXIS 13773 at *28-29.

The *Columbia* decision is precisely akin to the present case and compels this Court to deny the Motion to Dismiss.[8]  In this case, the Amended Complaint alleges that, having been severely criticized in the student body and in the public press for toleration of sexual assault of female students, the Colleges was motivated to accept the female's accusation of sexual assault and reject the male's claim of consent, to appear to the student body and the public as though the Colleges are serious about protecting female students from sexual assault by male students.  The Amended Complaint also describes how the Colleges was under investigation by the Department of Education at the time it was evaluating the claims against the Plaintiff.  (Am. Comp. ¶ 11(c).)  The Colleges attempts to distinguish the *Columbia* decision by suggesting that the criticism of the Colleges occurred *after* the Plaintiff had been expelled.  Def. Memo. at 10-11.  However, the Amended Complaint describes how the Colleges was criticized in February 2014, months *before* the Plaintiff was expelled, in an article called "*It's not Rape, if it's a Freshman: An Open Letter to Parents*" published on The Huffington Post website.  The subsequent *New York Times* piece referenced in the Amended Complaint was the result of a long investigation began shortly after the publication of the Huffington Post article.  (Am. Comp. 13(b) ("Upon information and belief, the New York Times began investigating the claims in The Huffington Post blog post shortly after it was published.").  Additionally, *The New York Times* article describes a long pattern of pressure on the Colleges around the time of the allegations arose against the Plaintiff.

---

[8] The Colleges suggests that the *Columbia* decision was "wrongly decided" and references a Petition for Rehearing *En Banc*.  Def. Memo. at 10 n. 5.  However, unless and until the decision is reversed, the decision remains binding precedent.

The Plaintiff acknowledges that one court has declined to follow *Columbia*. *Austin v. Univ. of Or.*, D.Or. No. 6:15-CV-02257-MC, 2016 U.S. Dist. LEXIS 121198 (Sep. 8, 2016).  This case is inapposite.  In that case, the district court in Oregon (where *Columbia* was not binding) declined to follow *Columbia* in part because plaintiffs made "no similar allegations of an atmosphere of scrutiny." *Id.* at *28.

The article was not published at the beginning of the pressure on the Colleges, but is evidence of the existing pressure at the time it took action against the Plaintiff.[9]  (*See also* Am. Comp. ¶14(e) ("In July 2014, the Finger Lakes Times reported that the Colleges had dealt with seven sexual assault cases, resulting in the expulsion of four students in the last two years.").)

The Colleges questions the link between such pressure and discriminatory actions against the Plaintiff.  Def. Memo. at 9.  However, there is nothing implausible or unreasonable about the Amended Complaint's suggested inference that the panel adopted a biased stance in favor of the accusing female and against the defending male student to avoid further criticisms that the Colleges turned a blind eye to such assaults and to appear as though the Colleges are 'tough' on sexual assault.  This is the essential holding of *Columbia*. 2016 U.S. App LEXIS 13773 at *29.  The Amended Complaint alleges that the Colleges employed a biased investigatory process in order to "look good" for the Department of Education and to compensate for prior misdeeds that were under national scrutiny.  (Amended Complaint ¶ 59.)  The Complaint contains significant details about the

---

[9] The Colleges suggests that "public discussion" of the Colleges handling of sexual assault matters did not occur until after the events concerning Plaintiff.  In particular, the Colleges suggests that the New York Times article appeared after the Plaintiff had been expelled.  Def. Memo. at 6.  However, the article describes a campus atmosphere at that time.  This is clear:

> "I think the school has been receiving a lot of pressure from the press, alums and certainly from students to act," [a recent graduate] said.  "As a campus we know it's not the case that rapes and sexual assaults are not happening on campus — it's that they aren't reported or the reporting system is failing."

Walt Bogdanich, *Reporting Rape, and Wishing She Hadn't*, New York Times, July 12, 2014.  The article also describes actions the Colleges had been taking as a result of rumors surrounding the alleged rape described in the article.  The article, for example, describes how the Colleges attempted to respond to these rumors:

As students returned after winter break, amid swirling rumors of a gang rape, they were greeted by a new mandate: Everyone had to watch an interactive video designed to educate them about sexual assault. The video contained hypotheticals and a series of questions. Answer them, students were told, or be denied campus housing.

*Id.*

enforcement actions of OCR, including the threats to revoke the federal funding of schools and the fact that the Colleges was under investigation by OCR at the time of the events.  This was not mere speculation but was gleaned form reports in respected publications and direct quotes from the persons responsible for enforcement.  The Complaint, for example, quoted the head of OCR and the Vice President to suggest that schools needed to make changes or risk the loss of funding. (Am. Comp. ¶ 12.)

The Defendant urge the Court to reject this linkage despite *Columbia*, suggesting the allegations are merely "conclusory."  Def. Memo. at 11.  However, the inference that schools are motivated by pressure from the Department of Education is, in fact, a reasonable inference that other courts have, on a motion to dismiss standard, drawn.  In *Doe v. Brandeis University*, a federal court refused to dismiss a lawsuit of a student who was disciplined for unwanted sexual conduct arising in the course of a dating relationship. *Doe v. Brandeis Univ.*, D. Mass. Civil Action No. 15-11557-FDS, 2016 U.S. Dist. LEXIS 43499 (Mar. 31, 2016).  The court noted that that the school had, in fact, adopted procedures that "substantially impaired, if not eliminated, an accused student's right to a fair and impartial process" as a direct result of pressure from OCR.  The court said:

> When considering the issues presented in this case, it is impossible to ignore entirely the full context in which they arose. In recent years, universities across the United States have adopted procedural and substantive policies intended to make it easier for victims of sexual assault to make and prove their claims and for the schools to adopt punitive measures in response. That process has been substantially spurred by [OCR], which issued a "Dear Colleague" letter in 2011 demanding that universities do so or face a loss of federal funding.

2016 U.S. Dist. LEXIS 43499, at *12-13.  In *Doe v. Ohio State Univ.*, a federal court observed that the failure of a school to comply with guidance by the Office of Civil Rights on Title IX "could jeopardize its federal funding."  *Doe v. Ohio State Univ.*, S.D. Ohio No. 2:15-cv-2996, 2016 U.S. Dist. LEXIS 7700, at *30 (Jan. 22, 2016).  And in *Doe v. Wash. & Lee Univ.* a federal court observed, "it is plausible that [the school] was under pressure to convict students accused of sexual assault in order to demonstrate

that the school was in compliance with the OCR's guidance." *Doe v. Wash. & Lee Univ.*, W.D.Va. No. 6:14-cv-00052, 2015 U.S. Dist. LEXIS 102426, at *23-24 (Aug. 5, 2015).[10]

The Colleges' reliance on *Doe v. Regents of the Univ.*, C.D.Cal. No. 15-cv-02478-SVW-JEM, 2016 U.S. Dist. LEXIS 123612 (July 25, 2016), is misplaced. The *Regents* court noted that "courts are split on whether allegations that a university was influenced by gender bias in light of national and local backlash satisfy the pleading requirements of *Iqbal* and *Twombly*." 2016 U.S. Dist. LEXIS 123612, at *14-15. The first case cited by *Regents* court for the contrary proposition was the district court decision in *Columbia* that, as described *supra*, was reversed. Moreover, the *Regents* court failed to recognize that the Plaintiffs, certainly at the pleading stage, are not required to present a "smoking gun" in which a administrator admits to bias. The Supreme Court has explained that a complaint is not subject to dismissal because it lacks direct evidence of unlawful conduct, and even if the court believes that discovery is not likely to yield this evidence. "[O]f course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556, *quoting Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) In this case, an examination of the allegations of bias demonstrate that they are more than sufficient under the *Iqbal-Twombley* standard. The Complaint, providing the Plaintiff with all reasonable inferences, tells a compelling story supported by evidence at every stage:

> Upon information and belief, the Colleges targeted and ultimately expelled Rolph in
> order to make an example of a Rolph, and demonstrate that, contrary to the well-

---

[10] The Colleges rely on a number of decisions suggesting that bias against those accused of sexual assault is distinct from bias based on gender. Def. Memo. at 11-12, *citing Doe v. Univ. of Cincinnati,* S.D. Ohio No. 1:15-CV-681, 2016 U.S. Dist. LEXIS 37924 (Mar. 23, 2016); *Salau v. Denton*, 139 F. Supp. 3d 988, 999 (W.D. Mo. Oct. 8, 2015); *Ludlow v. Northwestern Univ.*, 125 F. Supp. 3d 783, 792 (N.D. Ill. 2015); *Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 778 (S.D. Ohio May 20, 2015). This argument carries no weight, as it was expressly rejected by the *Columbia* court. 2016 U.S. App. LEXIS 13773 at *30 n. 11 ("A defendant is not excused from liability for discrimination because the discriminatory motivation does not result from a discriminatory heart, but rather from a desire to avoid practical disadvantages that might result from unbiased action.").

known incident of "Anna" that was being investigated for an upcoming article in the *New York Times*, that the Colleges are tough on men who "victimize" female students.

*(*Amend. Complaint ¶ 60.)

In this case, dismissal under a Rule 12(b)(6) standard is not appropriate because the Plaintiff has alleged what *Yusef* and *Columbia* require: numerous irregularities in the Colleges' procedures that raise articulable doubts about the accuracy of the outcome. In particular, the Amended Complaint alleges that the "investigation fell below the standard for a full, complete and competent investigation in a number of ways" and that the investigator was biased. (Am. Comp. ¶ 50.)   The Amended Complaint further alleges that "The College's conduct of the entire process was wholly unfair; the Colleges treated Rolph as if he was guilty from the start and did not permit him a full and fair opportunity to defend himself." (Am. Comp. ¶ 61.) Finally, the Amended Complaint alleges that a "number of provisions in the Sexual Misconduct Policy may have the unintended effect of encouraging the reporting of false or uncorroborated allegations." (Am. Comp. ¶ 23.)

In this respect, Plaintiff's case is analogous to another recent case wherein a motion to dismiss the Title IX claim by a student expelled for an alleged sexual assault was denied. *Doe v. Brown Univ.*, 166 F. Supp. 3d 177 (D.R.I. 2016). In the *Brown* case, the court examined the conflicting authority on this issue, but concluded that a complaint brought by a male student does not, on a 12(b)(6) standard, require "statistical evidence and/or data analysis that female students accused of sexual assault were treated differently." The court, in doing so, rejected the Colleges' position that the Amended Complaint should be dismissed because it contains no "overt evidence of gender discrimination." Def. Memo. at 9. The *Brown* court observed that "such a standard, is both practically impossible and inconsistent with the standard used in other discrimination contexts." *Id.* at *26. The *Brown* court also observed that "the best information for discerning whether alleged discrimination was based on the plaintiff's gender as opposed to his status as an accused student is generally in the possession of the defendant" and that "given the nonpublic nature of the underlying information, the type of

evidence . . . is more akin to what would be required at summary judgment." *Id.* at *30.  *Cf.* Wells 7 F. Supp. 3d at 751 (finding the plaintiff pleaded facts sufficient to cast doubts on the accuracy of a disciplinary proceeding by alleging, inter alia, that the defendants rushed to judgment and  failed to train the disciplinary hearing panel); *Doe v. Case W. Reserve Univ.*, No. 1:14CV2044, 2015 U.S. Dist. LEXIS 123680, at *5 (N.D. Ohio Sept. 16, 2015) (finding that the plaintiff pleaded facts sufficient to cast doubts on accuracy of a disciplinary proceeding outcome by alleging that the defendant, inter alia, did not allow the plaintiff to review that evidence and denied the plaintiff the opportunity to cross examine his accuser).

## C.     Article 78

The Colleges argue that plaintiff should have brought this claim as an Article 78 proceeding within four months of when the challenged decision became final.  Def. Memo. at 15, *citing* N.Y. C.P.L.R §7800 *et seq.*  However, Article 78 is not applicable to this case because the Plaintiff does not challenge, in brining breach of contract or other state law claims, an internal administrative and academic determinations of a school.  New York courts look to the relief sought by the plaintiff, and where the plaintiff seeks monetary damages, rather than to prohibit or compel an action, a breach of contract action may be cognizable. *Habitzreuther v. Cornell Univ.*, N.D.N.Y. No. 5:14-cv-1229 (GLS/TWD), 2015 U.S. Dist. LEXIS 112209, at *9-11 (Aug. 25, 2015) (breach of contract claim against a school did not have to have been brought as Article 78 proceeding). *Papaspiridakos v. Educ. Affiliates, Inc.,* E.D.N.Y. No. 10 CV 5628 (RJD) (JO), 2013 U.S. Dist. LEXIS 129748, at *6-7 (Sep. 11, 2013) (where a plaintiff does not seek to compel any action by a school, and instead seeks monetary damages for breach of contract and other state law claims, the action is not precluded by Article 78).[11]

---

[11] The claims in *Papaspiridakos* were filed more than four months after the student's suspension.  2013 U.S. Dist. LEXIS 129748, at *5.  As a result, the claims would have been barred under the Article 78 statute of limitations.

Furthermore, New York courts have held that "as a general matter, Article 78 proceedings are not the proper vehicle for the enforcement of private contractual rights." *Clark v. Trustees of Columbia Univ.*, No. 95 Civ. 10627 (PKL), 1996 W.L. 609271, at \*2 (S.D. N.Y. Oct. 23, 1996).

The Plaintiff, in seeking damages for breach of contract and the other state law claims, references his suspension as a cause of his damages, but Article 78 does not apply because the Plaintiff does not directly challenge the Colleges' decision in this action. [12]  In this respect, this case tracks the decision in *Papaspiridakos* supra.  In *Papaspiridakos,* the plaintiff was a student who was suspended after he had a series of conflicts with a faculty member.  He brought a case in the Eastern District of New York for damages arising from breach of contract and other state law claims.  The court concluded that the student's breach of contract claim and other claims under New York law were not precluded by Article 78.  The court observed that "while plaintiff's suspension may have been the impetus for this lawsuit, the fact that he was suspended does not preclude him from bringing a separate suit for breach of contract and [other state law claims]" 2013 U.S. Dist. LEXIS 129748, at \*7, *citing Alexson v. Hudson Valley Cmty. Coll.*, 125 F.Supp.2d 27, 29 (N.D.N.Y. 2000) (permitting student to bring action for breach of contract and deceptive trade practices after his alleged expulsion).  *See also Habitzreuther,* 2015 U.S. Dist. LEXIS 112209, at \*9 (". . . decisions regarding dismissals, expulsions, and suspensions are generally reviewed in Article 78 proceedings. However, a plaintiff may assert a cause of action for breach of contract against a university in certain circumstances.").

The Colleges' argument based on the Article 78 statute of limitations was specifically rejected in *Gally v. Columbia Univ.*, 22 F.Supp.2d 199 (S.D.N.Y.1998).  In *Gally*, the plaintiff filed a suit for

---

[12] Injunctive relief may be obtained under the Title IX claim.  Moreover, even if Article 78 were applicable, the Colleges' failure to set forth detailed factual findings in its disciplinary determination precluded plaintiff from effectively challenging the determinations in any meaningful appellate review in an Article 78 proceeding. *See Boyd v. State Univ. of New York at Cortland*, 110 A.D.3d 1174, 1176 (N.Y. App. Div. 3rd Dep't 2013).

breach of contract and related state law claims over her dismissal from a dental school. The school

argued that the case should properly have been brought as a state court proceeding pursuant to Article

78, and, further, that under Article 78, plaintiff's claims would have been barred by a four-month

statute of limitations. 22 F.Supp.2d at 205. The court rejected this argument:

> [P]laintiff seeks neither to compel nor to prohibit any action by defendants. Instead,
> plaintiff seeks monetary damages for injuries allegedly suffered as a result of
> defendants' breach of its contractual obligations. As such, plaintiff's action is properly
> before the Court, will not be converted to an Article 78 proceeding, and is not time-
> barred.

22 F.Supp.2d at 206 (citation omitted), *citing Pell v. Trustees of Columbia Univ.*, S.D.N.Y. No. 97 Civ.

0193, 1998 U.S. Dist. LEXIS 407 ( Jan. 21, 1998) (rejecting argument that student's suit against school

for breach of contract had to brought in Article 78 proceeding); *Keles v. Manhattan College Corp.*,

S.D.N.Y. No. 88 Civ. 8080, 1993 U.S. Dist. LEXIS 11696, at *3 n.1 (Aug. 20, 1993) ("because the

relief sought by plaintiff was money damages for an alleged breach of contract and not mandamus,

Article 78 is not the exclusive remedy"), *aff'd*, 29 F.3d 622 (2d Cir. 1994).[13]

## D.    Breach of Contract and Promissory Estoppel

"In New York, the relationship between a university and its students is contractual in nature."

*Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 481 (S.D.N.Y. 2015), *quoting Papaspiridakos*, 2013 U.S. Dist.

LEXIS 129748, at *3. New York courts have observed that when a disciplinary dispute arises between

the student and the institution, judicial review of the institution's actions is limited to whether the

institution acted arbitrarily or whether it substantially complied with its own rules and regulations.

---

[13] Similarly, in *Shelton v. Trs. of Columbia Univ.*, 236 F.App'x 648 (2d Cir.2007), the Second Circuit
reversed a dismissal of a breach of contract claim brought by a student against a school because they
should have been brought in an Article 78 proceeding for which the limitations period had expired.
The court noted that the school had conceded that the claims for monetary damages could have been
stated as contract claims. In that circumstance, Article 78 would not be applicable to the claims. 236
F.App'x at 650.

*Jones v. Trustees of Union College*, 92 A.D.3d 997, 998-999, 937 N.Y.S.2d 475, 477 (3d Dept. 2012); *Routh v. Univ. of Rochester*, 981 F.Supp.2d 184, 208 (W.D.N.Y.2013).[14]

A complaint for breach of this contract must identify "a specific breached promise or obligation." *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998). *See also Ward v. N.Y. Univ.,* S.D.N.Y. 99 Civ. 8733, 2000 U.S. Dist. LEXIS 14067 at *4 (Sep. 25, 2000) (in order to state a claim for breach of such a contract, a student must identify "specifically designated and discrete promises."). In this case, the Plaintiff has identified, in a non-conclusory manner, six separate ways in which the Colleges violated the express or implied guarantees of the Student Handbook.[15] (Am. Comp. ¶ 84(a)-84(f).) The key allegation in the Amended Complaint that establishes the basis for the breaches is:

> The contract between Rolph and the Colleges contains an implied covenant of good faith and fair dealing. This implied covenant prohibits the Colleges from doing anything which will have the effect of destroying or injuring the right of Rolph to receive the fruits of the contract. The contract between Rolph and the College, as a result, impliedly included the requirement that the Colleges provide Rolph with an investigatory and adjudicatory process that was "essentially fair."

(Am. Comp. ¶82.) This aspect of the Amended Complaint is consistent with long-established New York law. Under New York law, implicit in the contract between a school and a student is the requirement that the institution "act in good faith in its dealing with its students." *Evans v. Columbia Univ.*, S.D.N.Y. No. 14-cv-2658 (NSR), 2015 U.S. Dist. LEXIS 48768, at *10 (Apr. 13, 2015), *citing Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408, 402 N.E.2d 1150, 426 N.Y.S.2d 248, 251 (1980). Further, New York law provides that a private school's disciplinary determinations must not be arbitrary and

---

[14] In *Routh* the student only identified one potential breach: lack of sufficient notice. Of the time of the alleged misconduct. The court dismissed the complaint because the school had, in fact, "provided approximate dates on which Routh allegedly mistreated" the alleged victim. 981 F.Supp.2d at 209.

[15] The Colleges suggest that a student cannot maintain an action against a school based solely on the implied covenant of good faith. Def. Memo. at 17-18. That is not this case, as the Plaintiff has identified numerous specific contractual provisions that the school failed to comply with.

capricious. *Basile v Albany Coll. of Pharm. of Union Univ.*, 279 AD2d 770, 719 N.Y.S.2d 199 (3d Dept. 2001); *Rensselaer Socy. of Engrs. v Rensselaer Polytechnic Inst.*, 260 AD2d 992, 689 N.Y.S.2d 292 (3d Dept. 1999).[16]

In an unpublished opinion, *Atria v. Vanderbilt Univ.*, 142 F.App'x 246, 254-255 (6th Cir.2005), the Sixth Circuit found that a student's allegations of violation of a student handbook were sufficient to survive a motion for summary judgment, a more exacting standard than under Rule 12(b)(6). The student in *Atria* alleged, like the Plaintiff in this case, that the "the University breached its own procedures." Id. Other district courts have reached a similar result. Recently, in *Doe v. Brown Univ.*, D.R.I. No. 15-144 S, 2016 U.S. Dist. LEXIS 21027 (Feb. 22, 2016), the court denied a motion to dismiss where a student sufficiently stated a breach of contract claim for adjudication of sexual assault against the university. The court found that the Complaint had adequately alleged a number of violations of the student handbook "with respect to several . . . breaches of Doe's rights as an accused student." *Id.* at *36. Similarly, in *Dempsey v. Bucknell Univ.*, Civil Action No. 4:11-cv-1679, 2012 U.S. Dist. LEXIS 62043, at *18-*19 (M.D. Pa. May 3, 2012), the court found that the plaintiff had stated a claim for breach of contract based on a student handbook. In that case, the plaintiff alleged the school acted in a manner that was fundamentally unfair in a number of respects, including withholding relevant information from a plaintiff's attorney and failing to keep required records. The Dempsey court denied a 12(b)(6) motion: "[a]ccepting the allegations of Plaintiff's complaint as true, Plaintiff's have alleged sufficient facts to support a finding that the school had breached the student handbook . . ." *Id.* at *19.

---

[16] The Colleges responds that the school generally complied with some specific contractual provisions. Def. Memo. at 19-20.  However, this list fails to credit the allegations of the complaint as truthful, as required on a 12(b)(6) standard.

Applying this standard, the six specific allegations in Paragraph 84 the Amended Complaint state viable claims to survive a motion under to Rule 12(b)(6), as the claims are also consistent with these legal principles.   In particular, the Amended Complaint essentially describes a disciplinary process that was "wholly unfair" and "treated Rolph as if he was guilty from the start and did not permit him a full and fair opportunity to defend himself."   (Am. Comp. ¶61.)   The Amended Complaint details this breach of the College's obligation to act in good faith by suggesting that the Colleges "presumed that Rolph was guilty in order to look good for OCR." (Am. Comp. ¶59.) Assuming these allegations to be true, the College's actions were arbitrary and in breach of its implied contractual obligations.   Most the College's arguments in response to the specific alleged breach, *see* Def. Memo. at 19-20, would be more appropriate for a Summary Judgment motion after the discovery stage of litigation has been completed. The Amended Complaint alleges, in detail as required by *Twombly-Iqbal*, that the Colleges failed to comply with its express and implied contractual obligations. The Colleges' basic argument is: "we did what we were required to do." This is an argument that can only be evaluated following discovery. *See e.g. Vanden Bosch v. Bayer Healthcare Pharms., Inc.*, 13 F. Supp. 3d 730, 749 (W.D.Ky.2014) (denying motion to dismiss breach of contract claim; observing that claims "will be better fleshed out at the summary judgment stage"); *Boeve v. Nationwide Mut. Ins. Co.*, E.D.Mich. No. 08-CV-12213, 2008 U.S. Dist. LEXIS 63575, at *19 (Aug. 20, 2008) (denying motion to dismiss breach of contract and unjust enrichment claims "in deference to further discovery").

Similar to the breach of contract claims, under New York law, promissory estoppel is available as a cause of action where there is: a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made, and an injury sustained by the party asserting the estoppel by reason of the reliance. *See Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995) (citations omitted).  The Colleges argue that there were no explicit promises. Def. Memo. at 21.  However, in this case, such promises were explicit.  The Student Handbook states, for example,

that the chair of a hearing panel "is responsible for conducting a fair, orderly, and expeditious hearing." (Complaint Ex. A. at 6.)  Accordingly, the Plaintiff sufficiently alleges that the Colleges' various policies constitute representations and promises that he reasonably relied upon.

## E.    Negligence

The Colleges solely argues that the Negligence claim should be dismissed because they it is duplicative of the breach of contract claims.  Def. Memo. at 22.  This is incorrect.  The Amended Complaint alleges that the obligation of the Colleges to conduct an investigation and adjudicatory process in a non-negligent manner is derived form an independent source:  the accreditation standards applicable to the schools.[17]

> This duty is further imposed by the role of the Colleges in providing an education consistent with the liberal values of fairness and due process.
>
> > i. Accreditation standards applied to the colleges and universities generally require that truthfulness, clarity, and fairness characterize the institution's relations with students and that an institution's educational policies and procedures are equitably applied to all its students.
> >
> > ii. The Colleges is accredited by the Middle States Commission on Higher Education. The accreditation standards applied to the school require that the Colleges' "policies and procedures are fair and impartial, and assure that grievances are addressed promptly, appropriately, and equitably." See Standards for Accreditation and Requirements of Affiliation, Thirteenth Edition.

(Am. Comp. ¶93(b).) The Colleges fails to address this aspect of the complaint.  Under New York law, a party may bring both a breach of contract and a tort claim where there is a legal duty independent of the contract itself that has been violated. *See, e.g., Clark-Fitzpatrick v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389, 516 N.E.2d 190, 521 N.Y.S.2d 653 (1987).  Such a legal duty must, like in this case, "spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be

---

[17] State Courts have found that accreditation standards for school may be evidence of the relevant standard of care for schools and whether the standard of care was breached.  *See e.g. A.W. v. Lancaster Cnty. Sch. Dist. 0001*, 280 Neb. 205, 222, 784 N.W.2d 907 (2010).

connected with and dependent on the contract." *Id.*   Accordingly, the Plaintiff may maintain both tort and contract claims arising out of the same allegedly wrongful conduct when an independent tort duty is identified. *See Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 898-99 (2d Cir. 1980), *citing Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 408, 151 N.E.2d 833, 176 N.Y.S.2d 259 (1958).

In this case, the Amended Complaint alleges an independent tort duty imposed by the accreditation obligations of the Middle States Commission on Higher Education.   *See* 20 USCS § 1099b et seq (establishing role of accreditation agencies for higher education funding).; *United States ex rel. Diop v. Wayne Cnty. Cmty. Coll. Dist.,* 242 F.Supp.2d 497, 524-525 (E.D.Mich.2003) (observing that federal law and regulation "contemplates delegating the task of insuring the education viability of institutions of higher education to private accreditation agencies").  While New York does not appear to have addressed this issue,[18] the failure of the Colleges to comply with the independent obligation imposed by accreditation agencies constitutes a valid claim for negligence in other states. *Cf. Hospitals Gess v. United States*, 952 F.Supp. 1529, 1552 (M.D.Ala.1996) (finding negligence from failure of hospital to comply with standards from "Joint Commission of Accreditation"). *Fletcher v. S. Peninsula Hosp.*, 71 P.3d 833, 837 (Alaska 2003) (defendant hospital "voluntarily assumed a broader duty by seeking accreditation").

F.     **Negligent Infliction of Emotional Distress**

The Plaintiff concedes that this Count fails to allege conduct that unreasonably endangers a plaintiff's physical safety or causes the plaintiff to fear for his safety. *See* Def. Memo. at 23.

---

[18] Perhaps:  *Johnson v. Bon-Ton Dep't Stores, Inc.*, 278 F.App'x 56, 58 (2d Cir.2008) (referring to failure of elevator operator to comply with an industry standard, promulgated by the American Society of Mechanical Engineers and accredited by the American National Standards Institute").

**CONCLUSION**

Based on the foregoing, Defendant's motion to dismiss should be denied.

Respectfully submitted,

_____/s/ Catherine Josh_____
Catherine H. Josh, Esq. ((5025036)
45 Exchange Boulevard, Suite 915
Rochester, NY 14614
585-423-1974
585-325-6075 (fax)
chjesq@gmail.com

Joshua Adam Engel (Ohio No. 0075769)
(*pro hac vice*)
ENGEL AND MARTIN, LLC
5181 Natorp Blvd., Suite 210
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

**CERTIFICATE OF SERVICE**

This certifies that the foregoing was filed electronically on October 17, 2016.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system, as follows:

Angelo Anthony Stio, III (stioa@pepperlaw.com)
Hedya Aryani (aryanih@pepperlaw.com)
Michael E. Baughman (baughmam@pepperlaw.com)

_____/s/ Joshua Engel_____
Joshua Adam Engel (Ohio No. 0075769)
(*pro hac vice*)

22